Morning, and may it please the court. My name is Jordan Seibert, and I represent the defendant, David W. Hollingsworth, in this appeal from a criminal case in the Eastern District of District Court. Mr. Hollingsworth raised his two claims on appeal, one of which is foreclosed by binding Supreme Court precedent, which is his jury trial claim. So I will focus my remarks this morning on his jurisdictional claim. Article III requires that for, quote, all cases arising under federal laws, their determination by federal courts must be by the Supreme Court. And I will focus my remarks this morning on article III, which is a violation of Article III, namely, life tenure and irreducible compensation. Here, Mr. Hollingsworth allegedly committed a simple assault on a Navy base in Belchase, Louisiana. He was tried, convicted, and sentenced not before an Article III judge, but before a magistrate judge, and not at the Navy base, but here in New Orleans, in the Hale Box Federal Building. This violated Article III. This criminal prosecution, like all criminal matters, but especially since this criminal case was indictable at common law and not amenable to summary proceedings at the time this nation was founded and the Constitution was adopted . . . Let me ask you a question, counsel. Do you contend that Congress lacks the power under a tribunal on a federal enclave? Well, we do question that power in our brief, but it really lies beyond the scope of what this Court must decide in order to decide . . . I understand that, but you're not answering my question. Do you maintain that, under Article I, that they cannot create a non-Article III tribunal to try a petty offense? Well, I believe that in Palmore, the Supreme Court recognized that they could do that in the District of Columbia, that they could create a court to handle those cases, and that . . . In Marathon, in all these Article III cases, one of the exceptions has really been, traditionally, the power of the Congress to deal with federal enclaves and with territories, for example. Sure. And I think even if you . . . even if you extend Palmore to enclaves, which admittedly makes a certain amount of sense, this was not an enclave court. The trial didn't happen in the enclave. The conviction didn't happen in the enclave. Now, that's a separate argument. I'm going to try to break it down a little bit. Congress . . . that would mean that, accepting that Congress has the power to have created such a court, what Congress . . . the actual judge that was created here was . . . was what? Not created by Congress under Article I? That it met Article I power and also complied with Article III because it was an adjunct to the district court would say that, if anything, the magistrate judge had more authority than was even required. Right? Well, right. But in O'Donohue, the Supreme Court said that was actually problematic. In O'Donohue, the Supreme Court said that because the courts that had been set up at that time in the District of Columbia could hear a mix of both cases that pertained particularly to the district and also cases that would ordinarily arise under federal law, not unique to the district, that it wasn't a district court . . . a court that could be recognized as falling within the ambit of Congress's Article I powers to the district court. O'Donohue is still good law. It was distinguished in Palmore, but it was not overruled. But . . . just stay with me for a moment. If . . . if we say that Congress could have created a . . . an Article I court to have done exactly what happened here, and then we say that, in fact, what happens here is they created another court that . . . that is constitutional both under its Article I powers and meets the requirements for Article III when it is functioning off . . . out of a federal enclave as an adjunct to the federal court, why isn't that sufficient? Well, I think I would disagree with you about whether it meets the requirements of Article III because the magistrate judge doesn't enjoy life, tenure, and irreducible . . . Well, of course he doesn't. It's an Article I . . . it's an Article I creature. Do you dispute . . . But it's justified as an adjunct to the United States District Court when he's functioning off base because he is . . . he is seen as . . . as . . . he is functioning as an adjunct to the court. He derives his power from the Article III judge. You move him to a federal enclave, you don't have the Article III adjunct relationship. But you're in a federal enclave where the power of the federal government is . . . is . . . almost . . . I thought you had to use the word omnipotent. I don't like to use that word for the federal government, but anyway. Was that a question? No, that's a question. That's the argument and the counter-argument to your position and I want you to respond to that. Well, I don't think this was an enclave court. It wasn't sitting in the enclave. Traditionally, judges of enclave courts actually were required to live in the enclave and that is continued . . . that requirement continues to exist in current law at 28 U.S.C. 631b3. But in any event, the 11th Circuit in Brown v. United States at 748 Fed 3rd 1045 said, quote, although Congress considered magistrate judges to be adjuncts of the district court, the fact is that when a magistrate judge exercises their authority to try petty offenses, they are exercising the essential attributes of judicial power. And I don't think we can consider what the magistrate judge did here . . . Do you have a sense that one of our local magistrate judges, that he's acting without extra constitutionality? Yes, I believe so. At the time the nation was founded, at common law, only certain offenses could be tried summarily by justice of the peace and the like. The distinction between petty offenses and other crimes for the jury trial clause turns on the meaning of the phrase crimes. But the phrase . . . the term crimes does not . . . is not an issue for the determination of how far the judicial power of the United States extends. What is issue . . . what issue there is what the meaning of the phrase all cases is. And here the judge finally adjudicated, presided over a trial, convicted, sentenced. The disposition of this entire case was by the magistrate judge. That was an exercise of the judicial power of the United States. And that's recognized by the reasoning in Stern v. Marshall, because if this final adjudication were appealed on the merits, it would not receive de novo review. And in fact, at the time the nation was founded, even the few types of offenses that were amenable to summary review . . . Would you continue with your argument if he'd consented to this, or would that be dispositive in your analysis? I don't believe it would be dispositive, but ultimately it doesn't matter here because he expressly refused to consent. But I think the Supreme Court has actually granted cert in a case this term addressing the question of consent in relation to Article III. Okay. What about if there were complete de novo review, a two-tier system? So it was essentially a report and recommendation? Well, first of all, the report and recommendation procedure would not be authorized by the statute or by the . . . I know. I'm asking you to . . . if the statute weren't what it was amended to be, so therefore it just turned on consent pre-2000, would you have a constitutional argument? In other words, you would . . . He had consented. You would consent, but . . . So it's a convenience, which is, I think, what you'd agree commissioners and magistrates were supposed to do. Federal on case four is they're too far from a district judge. Everyone wants to do it quickly, pay the fine for littering, and it's okay. So are you asking me . . . I'm asking you hypothetically if there had been no amendment and therefore he'd consented. The larger magistrate function until the year 2000. Constitutional problem or not? I think there probably would still be a constitutional problem. Okay. Separate question entirely. If the way it were structured by Congress, 3401, it was a complete de novo review. They can try, they can sentence, but you get a full second tier. Constitutional problem? There's no constitutional problem with that if, when you say complete de novo review, you mean trial de novo. Yeah. Well, no, independent review of the facts, sort of like the military . . . Well, but the type of de novo review that the Supreme Court said cured the error in executive benefits was a paper record review, but the original type of proceeding that was at issue there was a summary judgment proceeding. So it was just a paper record proceeding. Okay. De novo, a paper record review of a paper record . . . So you're hedging on both of those, but the fact, what we have is what Congress put in in 2000, which basically your argument is a magistrate now has full judicial power. The magistrate's not an adjunct at all. They're doing the trial. They're even sentencing. That's where you see something alarming. But the primary argument against you is didn't the Supreme Court allow that in a vast array of Article I courts in Palomar? That's the difficult, the difficulty you face. I think your answer would be magistrates weren't enclave or seat of government courts. They just aren't. They've always been designed to be more like law clerks, adjuncts doing very minimal additional duties. That's correct. And in this case, it simply was not an enclave court. I mean the ambit of this territorial exception for enclaves ends at the perimeter of the Navy base. That's not where the trial happened. That's not where the conviction happened. That's not where the sentence happened. The courthouse wasn't there. You can go to the websites of the District Court in Wyoming and the United States District Court for the Eastern District of California and see pictures of federal courthouses in Yellowstone National Park, Yosemite National Park. Those have special magistrate judges that are appointed to handle an enclave docket in the enclave courthouse. That's completely different. Magistrates you would agree are Article I courts. Do you agree with that? Well, yes, I think that's correct. I mean, I guess the question is when they start exercising Article III power, what do they do? Well, they are established by Congress, very similar to the DC court system. It's an Article I court. Right. Okay. But the way that the Supreme Court, the reasoning that the Supreme Court used in order to The question is did they encroach in Article III power when Congress gave them this much more expansive authority? And then what's the best test? It would seem to me there's a sort of larger structural test. We ask have they now, are they utilizing the essential attributes of Article III? And I think arguably you win there, right? They're trying a full case. Right. But then is the right that they're disposing of something that we consider historically significant? That's where your problems are. It's a, it's a petty crime. In summary, justice has always been done through petty crimes. Well, but summary justice, even at the time the constitution was adopted, you got a trial de novo on appeal. So that's not real. It is hard for me mentally to think, okay, you don't get a grand jury indictment. So you don't get your grand jury clause. You don't even get a petite jury, but somehow you get, you get an Article III judge because a magistrate's not enough. And yet for capital offenses, we let judges who have the, don't have any tenure like federal Article III judges do those all the time. We let them. In other words, in every single state conviction where you have an elected judiciary. Right. The judges are vested with the same, with more. Article III does not address the distribution of power among state departments of government. It addresses the federal government exclusively. So state courts do not have to conform to Article III, only federal courts do. So this idea that somehow, and that's what's one of the things that's kind of disturbing about the reasoning in Palmore, that somehow because it's okay to do it in the state, it's okay to do it in the federal government. That's really inconsistent with the way that Article III itself works. It was a, it was an attempt by the founders to restrain the organs of a distant and distrusted national government. Let me ask you a question, sir, about, about the right of Hollingsworth to appeal the magistrate's ruling. What recourse did he have and did he use? To appeal the magistrate judge's ruling? Yeah. We appealed to the district court judge where we raised the foreclosed claim. Article III judge. Article III trial. Correct. And you appealed here, you're on here on appeal from a judgment entered by the United States District Court, an Article III court, right? That's correct. And we didn't raise the question of the merits of his conviction before the trial. So you, so you, this is, so you were here on the judgment of conviction entered by an Article III court that's being challenged on the basis that, that the conviction was entered by a non-Article III court. Article I. No, the Article, the Article III court affirmed the judgment of the magistrate judge. Your notice of appeal noticed both orders, isn't that correct? Yes, it did. Are you, you seem to be relatively hung up on the, the venue, the fact that it was not at the enclave. If the magistrate judge had gone to Belchase, would you have a complaint? If her, if she went to Belchase to handle the Belchase docket, that would be fine. But at page 294 of the record. That would be fine constitutionally? Well, I think under Palmore, its reasoning would say that it was okay for Congress to set up an enclave court. But, but is there any case that's ever said that magistrates handling ACA cames are, Congress intended them to be Clause 17 courts? It would be fine if the magistrate physically went there? Well, I, I believe that the historical precedents we cite in our reply brief have evolved into just that. The Yosemite courthouse that I mentioned, the Yellowstone courthouse, they're actually staffed by magistrate judges. And so when they walk there, they suddenly become Clause 17? They actually live there. Okay. But so then you are saying, you're conceding that magistrates are Clause 17 judges when they're in that building? Well, I think it depends on the nature of how they handle cases arising from the enclave. If it's just, when you look at page 294 of the record, she didn't take this case and keep this case because it was an enclave case. She kept it because it was a petty offense case. Whereas if you go to Yellowstone, they're handling those cases because they're enclave cases. And that's where the reasoning in O'Donohue, I think, defeats the government's claim that Palmore salvages the judgment in this case. One final question on the opening. The legislative history recites that Congress said, this amendment provides for an efficient, professional forum for dealing with misconduct of a minor nature, most often occurring on federal enclaves and typically remote from Article III facilities. Now, that says that the Congress here intended to create, to give to magistrate judges this particular authority. Now, what you're saying is Congress did not have the power to do that? It couldn't do it without also giving magistrate judges life tenure and irreducible compensation because Well, that particular provision then is unconstitutional. Yes. It's particularly as applied in this case. It is. Two quick questions. You just mentioned Yellowstone. Are those petty offense trials occurring? Is there any case that says those are occurring even when a defendant refuses to consent? The statute requires that that be the case, yes. Well, 3401, the same issue we're looking. But do you know of any case that's tested that? I'm not aware of one. Okay. The second question is just sort of a procedural one, which is when you appealed to the district court, you didn't notice this is an error. You said, I want a jury. Your client had this sort of tragic set of facts, suicide, the brother, et cetera. He wants a jury of his peers. What case do you have that stands for the proposition you've preserved for us to consider the Article III issue when on your direct appeal to the district court you didn't raise that? Well, we cite cases in our brief. I don't have them right at hand. But that's saying that a question of subject matter jurisdiction can be raised at any time. And this particular constitutional defect isn't just the denial of some random constitutional right, but it goes to the subject matter jurisdiction of the court. But in another sense, it just goes to the qualifications of the adjudicator. You have five minutes for rebuttal, so let's hear from your opposing counsel if you don't mind. Thank you. Mr. Boitman. Thank you. Good morning, Your Honors. May it please the Court. My name is Kevin Boitman, and along with Trial Counsel Ed Rivera, we represent the government in this matter. Your Honors, we urge this Court to affirm, and affirm based on the issue presented that we wish the Court would focus on, instead of the issues of magistrate judges in general. This case can be decided on the narrow issue of a court tried by a magistrate, offense tried by a magistrate that occurred in a federal enclave, with the issue simply being whether Hollingsworth, who was charged with a petty offense on the federal property of the Naval Air Station, must be tried before an Article III judge. And I think Judge Higginbotham and Judge Higginson, as both of you all have noted, the law pretty much indicates that, no, he did not need to be tried before an Article III judge because the offense was on the Naval Air Station. And that comes out of Article I's power, as you've mentioned, Judge Higginbotham. The Supreme Court has said that's plenary power. Congress has the exclusive authority to legislate in those issues, and indeed has the power to include police and regulatory powers, and it can regulate judicial proceedings as well. The offense here was simple assault in special maritime and territorial jurisdiction in the United States. There's no doubt that it took place at the Naval Air Station. There's no doubt that the Naval Air Station was found by the magistrate to be a federal enclave or federal property for that. Paul Moore is pretty clear that, in such a case, Article III judges are not required. The Ninth Circuit, pretty much on facts identical to these in Jenkins, which we've cited in our briefs, came to the same conclusion for an assault on a federal base at Camp Pendleton, taking the reasoning of Paul Moore and finding it indistinguishable from the assault on the federal air base. They also held that Article III judge was not required in that specific. So your argument is Congress can vest magistrates with the power to fully try and sentence petty offenders, and that is pursuant to Congress's authority under Article I, Section 8, Clause 17. That's your argument. And that's where we feel this argument really should be directed. Is there any legislative history in the Federal Magistrates Act that suggests that Congress thought that it was creating Clause 17 courts when it created magistrates? No, Your Honor. I believe that when they, you're talking about the 2000 Act? I'm talking about any legislative history ever saying, oh, well, magistrates, U.S. magistrates are in fact seat of government or enclave court judges. Do you know of any legislative history that says that? No, Your Honor, and I'm not aware of any historical act that would say that that is, it's limited to an enclave situation when they were providing the magistrates with the authority that they did. Okay. That's what your question is. And when you look at Alamore, I think when you look at Guam, when you look at the Virgin Islands, you look at all these courts, there are explicit jurisdiction vesting statutes. So the D.C. court system has, the Congress has said, and we vest you with full authority to try. Guam, Virgin Islands, each one. I don't know of any law that vests magistrates with that. In other words, magistrates derive their jurisdiction by virtue of district courts and 3231. Do you agree? So that's a, to me, statutorily, that's a huge distinction from these legislative courts that Congress has set up. In turn, Congress creates very specific vesting authority, but it's original jurisdiction. It's always derivative. I understand the question, Your Honor, but I don't think that's the only way Congress can allow a crime that occurs on a, excuse me, a crime that occurs on a federal base to be tried. I don't think it has to say that this specific crime that occurred on the federal base has to be before a specific judge that we're creating for an enclave base. I think Congress certainly could do that. But I think the issue here is that Well, I thought Congress, when they amended 3401 to provide for non-consensual trials for petty offenses, but in that legislative history, one of the things that it contemplated was the use of those magistrates on federal enclaves. Certainly that, it could cover that. I think the grant of 3401 that was done was broad enough to include that, Your Honor, if that's what, if that's where you're, if what you're Well, I mean, I told you earlier, you said that there was no real legislative history that evidenced an intent by the Congress to give to magistrate judges the power to operate on federal enclaves. I'm not, I'm not, my answer is, let me just explain if I may have misspoken. I'm not aware of any specific grant that said that was the only consideration, that it was that specific, that we're creating magistrates solely for an enclave purpose. Well, one of the, one of the concerns, of course, is that, that you, with federal, with federal, you have a civilian regime that needs to be regulated, traffic offenses, whatever else, crimes that civilians may commit on the ground, put aside the moment for the military and the UCMJ. What I read out to say is that Congress, in creating magistrate, in giving these powers to the magistrate judges, which were expanded over time from the original Magistrate Judge Act, that they envisioned that for these petty offenses, minor crimes, that those magistrate judges could also provide that same resource that commissioners used to provide on the, on the federal enclaves. I, I agree, and I think under the act, the magistrate, from a magistrate act as amended, the magistrates do have authority to handle those cases that do occur on the island. But that logic, wouldn't that logic mean that if Congress wanted to extend it to felonies with capital punishment, under your logic, if there are Article I courts, it could be like the, so now magistrates, if Congress felt like, if they didn't like Article III judges' adjudications of murders in a national park, magistrates could, under your logic, then adjudicate fully, sentence, no appeal even to a district court, come right to us? Not quite, Your Honor. And then I think it comes to something that you talked about, Judge Dickinson, with looking at what the historical practices were. And the historical practices in our country, from the founding of the Constitution on, have never been to give that type of authority for murders involving harsh sentences like that to non-Article III judges. In fact— But Article I judges in D.C. can. Yes, under Pallmore, they can, and the, because in Pallmore, they can— So what's the limit on magistrates? If you're resting your authority on Pallmore, you're essentially arguing that magistrates can fully try any level of crime, as long as it's in a national park, or a national forest, or on a base. And in this situation, though, Your Honor— We're only talking about petty offenses. Petty offenses. I don't think anybody would maintain that. You start with, it's a necessary, but not sufficient, condition to your argument here that we're talking about petty offenses, which do not trigger the obligations of Article III. That never have, historically. And the petty offense has to be committed on the federal enclave. On the federal enclave doesn't control where the trial is. Correct. All right, so— I agree, Your Honor. I think the federal enclave argument is under Clause 17, Congress has the authority to give this type of case to a non-Article III judge. Whether it's in Belchase or the Hale Boggs Building. Correct, Your Honor. But are enclave courts anywhere else limited to petty offenses? I'm sorry, Your Honor? Are enclave courts, Article I authority, anywhere else limited to petty offenses? Anywhere else— Does Pallmore— Of course it doesn't say that. No, Pallmore will not say that because Pallmore was not specific— So what would stop Congress, inch by inch, from saying, okay, now we want to go to Class A misdemeanors? Now we want to go to full felony trials? Well, I think— Is it some separate constitutional authority that says, well, there Pallmore stops because magistrates are different? I don't understand the rule. Well, constitutionally, I don't think the question has been precisely answered. And honestly, I cannot tell you the exact position of the United States on where the limit would be on that. And if the Court would like, I'd be glad to confer with Washington on that and give you a further answer. But I don't think you need to reach that today because, Judge Higginbotham, as you pointed out, this is a petty offense, which by 3401 and 636, magistrates are limited to that situation. This is a petty offense, so the Court does not have to reach beyond that to reach that question. But the Supreme Court has looked at magistrate authorities, as it has more recently with bankruptcy courts, over decades. And if I'm not mistaken, you know, Gomez, Peretz, each one of those cases, they've actually interpreted the statute to reverse an overexertion of magistrate authority. And those are things like can a magistrate even take a verdict? Can a magistrate do voir dire? The case we're looking at is a magistrate is going to fully try and sentence a person to jail for six months. And I think in something that, Your Honor— Well, I suggest to you that those earlier cases, such as allowing magistrate judges to preside over jury selections, they first affirmed an opinion that I happened to have written, but then they reversed it later in another case because I didn't think magistrate judges ought to be able to slice and dice trials like that. It's one of the debunking principles. You bring in a judge only to put the magic stitch and let the magistrate judge do all the preliminary work. That was the whole argument. But that has to do with the source of the authority of the Congress and what precisely power they're giving to the magistrate judges. The magistrate judge only has the authority, and I understand it, that Congress has given to it. Then the question here is what's the limits upon that authority? Now, I don't understand that there's any question but that Congress intended to confer upon magistrate judges the power to try a petty offense, right? Yes. So our question is, did they lack that authority here? No, Your Honor, they did not lack that authority. I'm making a mistake. I think— I know that's your answer. Well, they've always—they've—for—with commissioners, for hundreds of years, they've given them authority to try a petty offense, but not until 2000 did they say, even when the defendant says, I want an Article I judge. That's the change.  It's recent, Your Honor, but I—and again, it's very recent. And as opposing counsel kind of admitted in his argument, the consent really is not the issue. If the—or if the problem is in Article III, if a magistrate judge trying a petty offense offends Article III, as opposing counsel has made the argument, then the consent is really not the issue. Well, no. He didn't say that. He didn't say that because that's the question the Supreme Court's going to describe this term maybe in the bankruptcy context. But— Okay. So consent really could be of decisive importance. The Court is about to inform us as to whether it is. Consent could be in that situation. I mean, as this Court has dealt with the issue of consent, I believe it was in the Johnston case. Well, that— Well— You raised the question of consent only when consent is essential to the—to the—to the—to the—whether the Court has—the consent has always been the bouncing ball in this Article III structure, through the FTC versus Schor and all those other cases. And the—this Court has become—moving much more toward the structural vision of—of these rights. Right? Do you agree with that? I understand. And so that you can't—it's not a personal right, so you can't consent to it. And it's stern in that development. But here we're not talking about anything other than a—the exercise of a power that's always been there and has never required Article III jurisdiction. And it's stern in those cases you had common law rights. In FTC versus Schor, you had rights that admittedly could not be tried to—without—and the Court said consent. If it's the case that petty offenses are there, then I don't think consent's got anything to do with it. Am I missing something? No. I—I agree that consent is not the linchpin in this one, Your Honor. I think, as you've pointed out, historically, and indeed going back to the powers of the Constitution, a non-Article III judge has had the power to try petty offenses, and the Paul Moore, Schick, Clowens, and even in Callen conceding that there was a class of petty offenses that would not require jury trials. It's been part of our history. As you mentioned, Judge Higginson, commissioners had been a trial—had been a power. Yeah, but what I—what seems difficult in the history is to see did they—did Congress or anybody ever say over when the defendant is saying, I don't want that? That is a change—we know that's a change as recent as 2000 in the statute. That's correct, Your Honor. And it's a change that Congress has deemed, but I don't think it's a change that Article III has mandated. And I don't think— Why not? Yeah, that's true. And Congress certainly could give more—give more rights and make consent an issue, but Article III has not necessarily required that. And Judge Higginbotham, as you pointed, this has been a power that's always there. If the issue is magistrate wants trying a petty offense is repugnant to Article III, the consent issue is not there. But this is a power that non-Article III judges have had throughout our history. And looking at the historical practices and even noting the difference of—Blackstone himself noted the difference in the definition of crimes and misdemeanors. And I realize opposing counsel and I have a difference of agreement on whether crimes includes criminal offenses, if they're the same thing or not. But the Supreme Court's rationale in coming to questions on whether the jury trial rights have said, no, it is not the same. You mentioned Johnston, right, our Johnston decision. The Johnston decision for the issue of consent. And again, and Johnston was whether 2255s could be referred to. But we said it really can't be a situation where a magistrate has authority to second guess the district judge, which it would be the circumstance where a magistrate judge is holding an evidentiary hearing and ruling on a habeas motion because that's implicitly assessing a district court's authority. That's correct. Right? So we said no. But it seems illogical to say, well, you can't—a magistrate can't revisit a conviction through habeas, but can impose a conviction in the first instance. Respectfully disagree, Your Honor. I think it's a very big difference in the case and I don't think the issues that were there in Johnston are in here. The big issue in Johnston is just like you said, an Article III judge has tried a case or presided over a case, has imposed a conviction, has given—has done the entire thing. Now you're asking an Article I judge to review the Article III. And ultimately, because COAs are required, when the Article I magistrate— That's the encroachment problem of separation of powers. What we're worried here, though, about is you also can't abdicate. District judges can't say, you know, I just don't want to try these cases anymore. Let's let a magistrate do it. And I'd like to be a Fifth Circuit court. I want to review it on appeal. Congress has given us that nice structure. We don't need to do our work. We'll let the magistrates do it and we've become the appellate court. That looks to me like what Congress has done. And no wonder district judges, some of them, might like it, because they don't want to try the cases, perhaps, and the magistrates are there to do it for them. And they get to—all they need to do is perform the appellate function. But I see that as an act of Congress, Your Honor, that they're—that does not offend the Constitution. And especially when looking at our history, Article III judges have not been required to try these type of cases. Well, you have a non-delegation problem. You know, district courts are appointing these magistrates, but they are supposed to be adjuncts doing ministerial duties to assist the district court. Here, they're trying the whole case and sentencing, and the district courts become the appellate court. In this specific limited instance of a petty offense— Okay, but then it all reduces to petty offenses answer the problem. That's the argument. But I think that's a—but I think that's a big distinction. It is a big distinction. Because the petty offense are something that traditionally non-Article III judges have done. Commissioners did it. Commissioners did it for years, not district courts. Absolutely. And that's why I don't see the big encroachment. I understand, in theory, if Congress would try to give felony powers to— Do we know of any case that said a commissioner's trying a petty case over the objection of a defendant? Do we know of any published case that says that survives Article III review? No, Your Honor, and I don't think that question has been precisely answered. Ever in 150 years? That I have found, because— Yeah, I agree. So it's all 2000. Congress has made a very, very significant transformation of the magistrate's rule. Now, over consent, you can try a full case. But I think it's been—I think it was a congressional act looking over the history, looking over the cases, looking over the— Congress, when they pass these acts, they look at the Constitutional. They're worried about getting it right, too. And they did look at it. My understanding of what Congress thought made this Constitutional was three things. One, consent. They'd always given magistrate petty authority consent until 2000. Two, control. They said, well, district judges control. Why? They appoint the magistrates. But not on military enclaves. OK, but— No consent required for commissioners or anything else. You could go—you could be drugged before those commissioners, and you'd be sentenced. So, yes, consent before a magistrate was required on the Magistrate Judges Act outside a military enclave. And so the actual explanation of why they—when the Congress intended to extend the use of—to draw on the magistrate's resources to deal with this old commissioner's work, they did not impose a consent. So it's not a change. It's a conformity to existing practice. And I think that's actually something we made in our brief, Judge Higginbotham, that if anything, this actually may be a return to something that was already there. Well, I want to take you back to consent. The Court is retreating from the power of individuals to have their cases shaped by their personal preferences rather than the structural protection of the Constitution. But look at what happens in the magistrate judges now when they consent to be tried civil cases, jury cases, which at common law are very fundamental rights themselves. And they quote consent in some of these jurisdictions because they're initially assigned to magistrate judges. Let's say, affirmatively, we get out to the displeasure of a district judge, they try the case, the consent is the way that operates on. So you've got this—you do have, right now, a structural arrangement that is quite odd in that we're so protective of Article III judges when magistrate judges in some jurisdictions are trying most of the cases, the few cases that are being tried. And certainly understanding that issue, Your Honor. However, going back just to the words of what the Supreme Court— That may be more of a social comment of some kind, but I— Understand. Going back to the words of the Supreme Court, though, and I think it's clear, and this could answer the issue of consent as well, there is simply no support in either the constitutional text or constitutional history or practice for the proposition that an Article III must preside over every proceeding in which a charge, claim, or defense is based. And there's been no history requiring every federal question, including criminal prosecutions, to be tried in front of an Article III. One way I can comment on the problem of the trial lawyer, he said, well, you know, the choice—at least when I'm trying—I opt to trial for a magistrate judge, I'm selecting—I'm choosing a judge that was a product of merit selection. That's distinguished from those Article III political appointees. You mean all those other judges? Yeah. Mr. Bortman, would you like to add anything to Judge Higginbotham's answer, or are you happy? No, Your Honor, I'll just take the red light, simply say thank you, and we would ask this Court to affirm based on the narrow questions. Thank you, Your Honors. Justice Everett, you have five minutes if you want to use them. I'll let the lawyers get in on this discussion. Congress does have a power under Article I, Section 8, Clause 17. It's the power to create an enclave court to handle enclave crimes. That's not what it did here, and therefore, that power does not support affirmance of the judgment. Secondly, the issue of a petty offense. As I said before, that question, the distinction between a petty offense and other types of offenses, turns on the meaning of the word crimes with respect to the clauses pertaining to the right to jury trial. That is completely irrelevant to the question of how far does the judicial power of the United States extend— But it does seem there would be symmetry. I mean, the molten core of peer judgment is about the same as an Article III life tenure judge, and the Supreme Court has sort of conclusively said, no, petty offenses are different. You don't get peers. Well, the problem is that we operate under a written Constitution, and the written Constitution uses different wording with respect to these distinct— Yeah, but if anything, the word crime is more clear textually. So we operate under a written Constitution, but the Supreme Court has also occasionally looked at the history to say the words don't mean what they appear to mean. That's sort of what I think Duncan—Duncan is that case. That's true, but the word crime appears in the clauses pertaining to jury trials. It does not appear in the clause pertaining— Why isn't the answer just the amount of control district judges have of magistrates? In other words, they appoint them, right? They're inferior officers appointed by principal officers, meaning district judges. Number two, eastern district Louisiana judges had to refer this authority to them, and they can remove them. So that's so much control. There's really no stern structural problem at all. But Stern says the structural problem does exist until you have review that is adequate for the type of proceeding. In that case, it was de novo review on a paper record for a paper record judgment on summary judgment. Here, we had a full-blown trial, so we need a trial de novo in order to cure the constitutional problem. And the constitutional problem is not subject to harmless error review. It can only potentially be cured, and here the cure would be the exact relief we're asking for, which is the trial de novo. And historically, that is exactly what people who were tried in these summary proceedings received beginning with the reign of Charles II in the 17th century. They received a full-blown trial de novo before the Court of Sessions where they could re-examine witnesses and deduce additional evidence. Well, obviously, that's not what we have. Did I understand you to concede that you agree if a magistrate goes to a building in a park, then that magistrate is operating under Clause 17 power and it isn't inappropriate? Potentially, if the magistrate in the building in the park is handling an enclave docket, because that seems to be what O'Donohue requires. In that case, the court that had been set up for the District of Columbia was handling a mix of district cases and non-district law cases, and therefore, the Supreme Court said that it had to satisfy the requirements of Article III. Analogously here, not only did the trial and everything take place outside the district, but the whole basis for the magistrate trying this case was not because it was an enclave crime. She said on the record at 294 it was because it was a petty offense, and that's consistent. It's because of the maximum penalty, and that's consistent with what the statute says, that she has the power because of the nature of the penalty that could be imposed, and that penalty can be imposed for lots of crimes that are not petty offenses, such as, as the government mentions in its brief, transporting water hyacinths in interstate commerce. You don't have to do that on a federal enclave in order for it to be a federal crime, and if the magistrate judge presides over that type of case, then she's not doing it pursuant to the enclave clause, and because her presiding over this case was because it was the same type of case as that case, she was not sitting as an enclave judge, and this court cannot affirm the judgment on that basis. So we respectfully ask— Whose judgment? The judgment— You're appealing from the judgment of the district court. So what you want us to do is reverse the district court because some other judge entered a judgment. The judgment you appealed from is the judgment of the district court, right or wrong, right? That's true, Your Honor, but subject matter jurisdictional defects can be raised at any time. They're subject to de novo review, and in this case, had we raised— The district judge, the Article III judge here had no jurisdiction? The Article III judge had jurisdiction to hear the appeal from the magistrate judge, but the fact that it did so does not cure the jurisdictional defect because in executive benefits, the cure was based on the fact that de novo review had actually been given, and of course, I would make a distinction between that type of de novo review and the type of de novo review we're requesting and that we contend is necessary. Good. All right. So we ask that you would vacate the judgment and remain for trial de novo. Thank you, Your Honor. Thank you, and we have the argument.